## CHARLESTON.

L. A. HOOPER, *Trustee, Etc., et al., v.* WALTER S. WOOD AND GEORGE W. McCLINTIC, *Trustees, et al.*

Submitted March 11, 1924.    Decided April 15, 1924.

1. PERPETUITIES—*Devise Held Violative of Rule Against Perpetuities.*

   A will which provides that the entire estate shall be held in trust for management, control and payment of certain charges and bequests out of the income thereof, until the youngest grandchild of the testator shall have attained the age of thirty years, and then to be divided between and among the grandchildren or the survivor of such children or their descendants; but in event that should all of the grandchildren die without descendants before the death of their father, (testator's son), then the power of disposition of the estate is granted to the father of the grandchildren (testator's son), violates the rule against perpetuities. A grandchild may be born twenty-one years and ten months after the death of the testator; and the person or persons in whom the estate will vest is uncertain, vague and remote. (p. 4).

2. WILLS—*When Valid, Division in Devise Containing Invalid Provisions May be Given Effect.*

   If there be valid and invalid provisions in a testamentary disposition of property, and the valid provisions are not so interdependent with the invalid provisions that the former can be carried out without doing violence to the scheme and

intent of the testator, the valid provisions will be saved and effect given thereto. (p. 7).

3. SAME—*Intention of Testator Controls; Invalid Provision Declared Null and Void; and Valid Provisions Given Effect, Where Result Will Not Work Injustice.*

The intent and purpose of the testator is the controlling factor in the construction of a will; and when the intent and purpose is clearly apparent it will be carried out unless violative of some positive rule of law. If some provisions violate the rule against perpetuities or any other rule of law, and others do not and can be carried into effect if the invalid provisions be stricken out, without changing the intent and purpose, and without working injustice among the beneficiaries, the courts will consider the invalid provisions as null and void, and give life and efficacy to the valid portions. p. 7).

4. SAME—*Provisions for Annuity and Life Support Construed With Reference to Corpus of Estate.*

Where one of the principal purposes of a will is to provide for the maintenance and support of the widow during her natural life, and widowhood, out of the income of the estate, and to provide for an annuity to a sister-in-law of the testator out of the income during her life, and the entire estate is placed in the hands of trustees and executors for that purpose; and the devolution of the corpus of the estate is held to be void as violating the rule against perpetuities, the maintenance and support of the widow and the annuity for the sister-in-law is a primary charge, and the estate should be so administered as to adequately meet that charge, before the persons entitled to the corpus of the estate receive any portion thereof. In such case the appellate court will remand the cause for that purpose. (p. 9).

Appeal from Circuit Court, Kanawha County.

Suit by L. A. Hooper, trustee, etc., and others against Walter S. Wood and another, trustees. From a decree for defendants, plaintiffs appealed.

*Reversed in part. Affirmed in part. Remanded.*

*Russell S. Ritz* and *James S. Kahle,* for appellants.

*Mathews, Campbell & McClintic, Brown, Jackson & Knight* and *Harold A. Ritz,* for appellees.

LIVELY, JUDGE:

The object of this suit is to obtain a decree to set aside as invalid the will of John R. Seal, and to distribute his estate as if he had died intestate.

Plaintiff Hooper is trustee in a bankruptcy proceeding in which it was ascertained that Gordon S. Seal, the only child of testator, was a bankrupt; and the trustee and Gordon S. Seal claiming that the latter inherited the estate of his father under the laws of descent and distribution, filed the bill, both joining therein as plaintiffs, to declare the will of J. R. Seal null and void on the ground that it violates the rule against perpetuities.

The appraised value of the estate is $175,433.75, consisting of a house and lot in the city of Charleston valued at $8,500; a one-fifth undivided interest in a tract of land in Fayette county appraised at $5,456; and the remainder in stocks, bonds and other personal property. After payment of the debts there appeared to be in the hands of the executors, at the time of the entry of the decree complained of, personal property amounting to $92,579.04, together with the house and lot and the one-fifth interest in the real estate in Fayette county. It appears that there are claims of the federal government for income taxes, and obligations of the testator as endorser or surety, all of which if successfully asserted will materially lessen the assets. The annual income derived from the property for the year preceding the entry of the decree was $3,808.97.

Testator left a widow, a second wife, with whom he was married in the year 1916, and his son Gordon S. Seal, a son of his first marriage, who was also married and had two children, John Ridley Seal, ten years of age, and Jane Anne Seal, seven years of age. The wife, Julia W. Seal, the son Gordon S. Seal, his wife Inez, and his two children named, and Mrs. Rosa B. Flournoy, a sister of testator's first wife, are the recipients of testator's bounty under the will Plaintiffs in substance assert that the entire will is invalid because it violates the rule against perpetuities, and all of the bequests therein are a part of the scheme and plan of the testator so intimately interwoven and interdependent that

all of the provisions must fall if the will be violative of the rule against perpetuities. Defendants assert that the will does not violate the rule against perpetuities and is valid in every respect; and they assert that if that portion of the will which puts off the vesting and distribution of the estate to a period which would violate the rule against perpetuities, yet the bequests to the widow Julia, and to Mrs. Flournoy are separable therefrom, are valid, and those provisions and bequests should remain intact and should be carried out as a dominant intent and purpose of the testator.

The will, dated October 2, 1919, devises and bequeaths the entire property of testator to Walter S. Wood and Geo. W. McClintic, Trustees, to hold, use, manage and collect the income therefrom for the purposes: (1) paying taxes, upkeep and expenses of administration; (2) paying to the widow, Julia, $200 a month during her natural life, to cease at her death or if she should marry again; directing that she shall have complete possession, occupancy and control of the Bradford street house and lot, in Charleston, for her natural life and during her widowhood; (3) payment of $100 per month to Gordon S. Seal during his natural life, directing that it shall be paid to him and none other and that the trustees shall not recognize any sale or assignment of this monthly stipend by him. This bequest, in the nature of a spendthrift trust, is directed to be paid out of any further income from the estate after the payments directed to be made to the widow. (4) Power is given to the trustees to sell any of the property and reinvest the proceeds in securities, the character of which is named; (5) out of any further income after the payments above set out the trustees are empowered to educate and support the grandchildren or any other children thereafter born to Gordon S. Seal; (6) to pay to Rosa B. Flournoy $25 per month during her life, and a reasonable proportion of her funeral expenses; (7) should Gordon die before the testator the amount to be paid to him is directed to be paid to his widow during widowhood; and should she die before the death of testator or that of Gordon, then the sums intended for him under the spendthrift trust shall be expended by the trustees for the support and edu-

cation of Gordon's children until the youngest shall have attained the age of thirty years; (8) in the event of the death of Gordon's children without descendants before Gordon's death the income not otherwise provided is to be paid to Gordon during his natural life and then to his widow, Inez, should she survive, for the period of her natural life or until her remarriage; and should Gordon's children die without descendants prior to his death then Gordon is given power to dispose of the estate by will; and if he does not exercise that power then the estate goes to those who would inherit under the laws; providing always that the trustees should retain ample property to pay the bequests provided for. Then follows a disposition of some oil paintings, personal articles and the household furniture, and direction to the trustees to pay $15 a year for the upkeep of two lots in a cemetery at Norfolk, in which are buried the testator's first wife and parents; and a direction to the trustees to keep the house on Bradford street insured, and have it rebuilt in case it burned, and keep it in good order and repair and expend such sums of money as may be necessary for that purpose out of his estate.

Item Four of the will furnishes the basis of the controversy and deals with the devolution of the estate. It is as follows:

> "I, 'J. R. Seal', further will, devise and direct that after the death of the said Gordon S. Seal and when thereafter the youngest of his children shall have attained the age of thirty years, then the said trustees shall divide all the property herein devised to them between and among said children or to the survivor of such children or their descendants unless the said Julia W. Seal shall then be living and shall not have remarried and the said Inez Seal shall then be living and shall not have remarried and unless the said Rosa B. Flournoy shall then be living. In such event, the trustees shall retain ample property so as to guarantee to each of said persons the income herein directed to be paid to them for the respective periods hereinbefore fixed. I further will and direct that the said trustees shall when the events happen upon which the payment of said sums of money shall cease as

herein directed, divide the amount of property so·
retained by them among the said children or the
survivors of them as hereinbefore directed as to
the other property.''

Do the provisions of Item Four above quoted violate the
rule against perpetuities and render the will invalid in toto?
The provisions of the will are not complex. It was the
intention and purpose of the testator to amply provide for
his wife by giving her the occupancy and control of the
dwelling house on Bradford street during her life or until
her remarriage, and the sum of $200.00 per month
during her natural life or until her remarriage. This
appears to be the first thought of the testator. Out
of any further income from the estate a spendthrift
trust is created in favor of his son. It is also clear
that Mrs. Flournoy was to be paid the sum of $25 per
month during her natural life out of the income of the estate;
and that the graves in the cemetery should be kept in order
by the expenditure of $15 per year. The scheme of the tes-
tator was to keep the corpus of his estate intact until his
youngest grandchild, whether then living or thereafter to be
born, had reached the age of thirty years, when it should be
divided among them or among their descendants. It was pro-
vided, however, that if they should die without descendants
before the death of their father, he, the father, should have
the power to dispose of the estate by will and if he did not
exercise the power then the estate should descend under the
law of descents and distribution. We are clearly of the
opinion that this scheme of the will violates the rule against
perpetuities. It is contended by defendants, the trustees and
executors, who answered, that the estate vested in the grand-
children at the moment of the testator's death, and the pro-
vision for distribution of the estate when the youngest should
become thirty years of age is simply deferring the possession
and enjoyment thereof, and has nothing to do with the vesting
of the estate, and therefore does not violate the rule against
perpetuities. The clear intent of the testator was to control
his estate and keep it intact until a period when the youngest
child of Gordon should reach the age of thirty; a time which

would place it beyond twenty-one years and ten months after the lives of persons then in being. It is quite possible and probable that other children will be born to Gordon Seal. We think the clear purpose shown by Item Four was to keep the estate intact and control of it through his trustees until the youngest child of Gordon should become thirty years of age, at which time it would be determined who should inherit. Should we hold that the corpus of the estate is now vested in the two grandchildren subject to be opened up for participation by any child which may hereafter be born, what interest under the terms of the will could be transferred by them? What certainty would there be that they would ever come into the possession or enjoyment? To whom would the property descend when the youngest child became thirty years of age? Or if all of the children should die before the youngest became thirty years of age or before the death of their father, what interest would the purchaser or assignee take? Who would buy? A similar question arose in *Prichard* v. *Prichard,* 91 W. Va. 398, and we can see no distinction in the purpose of the testator in that case and in the one now under consideration. Many cases of a like import are cited in the Prichard case, particularly the case of *Johnson's Estate,* 185 Pa. St. 179, reported in 64 Am. St. Repts. 21, where many cases are collected in a note thereto. See *Quinlan* v. *Wickman,* 233 Ill. 39; Gray on the Rule against Perpetuities, sec. 370; *Eldred* v. *Meek,* 183 Ill. 26; *Re Kountz,* 213 Pa. 390.

Shall the entire will fail because of the testator's scheme to preserve the devolution of his estate beyond the lawful period? What shall become of the bequests and provisions in favor of the widow and the sister-in-law? Are they so inseparably connected and interwoven with the scheme to prevent the devolution that they shall also fail? In the construction of wills the intent and purpose of the testator, as gathered from the whole will, is the guiding star in the interpretation. When the intent and purpose is ascertained it is the duty of the courts to give effect thereto and carry out the intent and purpose if it does not violate any rule of law. It is a very well established rule of construction that where provisions of a will are obnoxious to some rule of law, and therefore fall, and these portions can be eliminated without

changing the testamentary scheme or some well defined intent
and purpose which is not violative of, any rule of law, the
courts will uphold the valid portions. If, however, the valid
and invalid portions are so interwoven and inseparable that
the invalid parts cannot be disregarded and the valid por-
tions carried out without violence to the scheme and intent
of the testator and working some inequality in the status of
the beneficiaries, then all of the will must fall together. *Saxton*
v. *Webber,* 83 Wis. 617; 20 L. R. A. 509; *Haxtun* v. *Corse,* 2
Barb. Ch. 506, 5 L. Ed. 732; 21 R. C. L secs. 53, 54; *Goffe* v.
*Goffe,* 37 R. I. 542; 40 Ann. Cas. 1916B 240; *Prichard* v
*Prichard,* 91 W. Va. 398. In the Prichard case, where the
will was held to be invalid because it violated the rule against
perpetuities, there was a bequest of $5,000 per year to the
widow of testator's dead son Harry, which was to be paid
to her out of the proceeds of the one-third interest in the
estate which was willed to the dead son's descendants, the
testator's grandchildren. This provision was held to be valid
as creating a charge against one-third of the estate and the
trust created by the will was continued for the purpose of
carrying out that provision of the will and to see that this
valid bequest was made efficacious. It was entirely separable
from the scheme by which the testator designed to keep the
devolution of his estate intact until the year 1950. *Graham*
v. *Whitridge,* 66 L. R. A. 408; *Landram* v. *Jordan,* 203 U. S.
56. It is well recognized that the intention of a testator is
not to be set aside because it cannot take effect to the full
extent, but that intention is to be carried out as far as it
can without working an inequality or without violating some
positive rule of law. *Thellusson* v. *Woodford,* 4 Ves. Jr. 227.
Where there are several distinct trusts created by a will
which are independent of each other and may be carried out
independently of each other, some of which are lawful, others
void as violating some rule of law, but which trusts may be
separated, the illegal trusts may be cut off and the legal ones
permitted to operate. Gray's Rule against Perpetuities, sec.
422-a. Of course, if by doing so a result contrary to the will
of the testator would be accomplished, a valid trust cannot
stand. If the wishes of the testator would be defeated if one
trust was retained and the other rejected or injustice would

result from doing so to the beneficiaries or some of them, then all must fall together. *Tilden* v. *Green,* 130 N. Y. 29; *In re Johnson's Estate,* 185 Pa. St. 179; *Clemens* v. *Clemens,* 60 Barb. (N. Y.) 366; *Reid* v. *Voorhees,* 216 Ill. 236, 3 A. & E. Ann. Cas. 946, and note. We cannot see that the trust for provision for the widow and the sister-in-law and for keeping up the graves of testator's wife and parents, is so interwoven with the scheme to prevent the devolution of his estate beyond the lawful period, as to render them inoperative and void. They are clearly separable from the unlawful restraint. To carry them out would be in furtherance of a clear intent and purpose of the testator. Whether the scheme to prevent the vesting of the corpus of the estate beyond the lawful period is upheld or falls, it can make no difference to the widow or the sister-in-law. They would still be the beneficiaries in the trust to the same extent. It will be noted that the testator makes provision for them if they be living and unmarried, even after the youngest grandchild becomes thirty years of age. No inequality or injustice is accomplished by so holding. These bequests form no part of the scheme which violates the rule against perpetuities. They are a charge upon the entire estate and the trust will be upheld for the purpose of carrying out these lawful bequests.

That part of the decree which adjudicates that the trust created by the will for the benefit of the widow Julia W. Seal and for the benefit of Mrs. Flournoy as a valid and subsisting trust, and requires the trustees to exercise the powers granted them, finds that this trust is not violated by any other provisions of the will, is affirmed; but the other part of the decree dismissing the bill as presenting a moot case is reversed and the cause remanded for further proceedings. That portion of the will which preserves the corpus of the estate in the hands of the trustees for distribution when the youngest child of Gordon S. Seal shall have reached the age of thirty years is held to be invalid as violating the rule against perpetuities; but the entire estate or so much thereof as may be necessary should be held by the trustees for the purpose of paying to the widow and the sister-in-law, out of the income, the bequests made to them, and for the purpose of upkeep of the graves of the testator's parents

and former wife in the city of Norfolk, Virginia. Whether any portion of the estate should be turned over to the heir at law or the trustee in bankruptcy for the plaintiffs, depends upon the discharge of the bequests herein held to be valid, and can only be determined upon the further administration of the estate. The bill will be reinstated and the cause remanded.

*Reversed in part. Affirmed in part. Remanded.*