SECURITY NATIONAL BANK & TRUST CO., *etc., Trustee, etc.*

*v.*

EUGENIA WOODWARD WILLIM, *et al.* AND EDWIN McMAHON SINGER, ADMINISTRATOR OF THE ESTATE OF RUTH M. WOODWARD, AND THE CHASE MANHATTAN BANK, A CORPORATION, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF PHILIP G. WOODWARD

(No. 12654)

*and*

SECURITY NATIONAL BANK & TRUST CO., *etc., Trustee, etc.*

*v.*

EUGENIA WOODWARD WILLIM, *et al.,* AND THE FIRST NATIONAL BANK OF BIRMINGHAM, TRUSTEE UNDER THE WILL OF H. G. WOODWARD, AND EXECUTOR UNDER THE WILL OF JOSEPH H. WOODWARD, II.

(No. 12655)

Submitted September 27, 1967    Decided January 16, 1968.

*Goodwin, Mead & Goodwin, Charles P. Mead, Ronald W. Kasserman,* for appellants.

*Petroplus, Bailey, Byrum & Hesse, George G. Bailey, McCamic & McCamic, Jay T. McCamic, Schmidt, Laas, Schrader & Miller, Henry S. Schrader, Dennis R. Lewis, Graham, Dunn, Johnston & Rosenquist, Donald G. Graham,* Seattle, Wash., for appellees.

CAPLAN, JUDGE:

This is an appeal from a final judgment of the Circuit Court of Ohio County rendered in a declaratory judgment

proceeding instituted by the Security National Bank & Trust Company. The said bank hereinafter sometimes referred to as "Security" instituted an action in the aforesaid court as trustee under the Last Will and Testament of Caroline C. Hughes seeking the court's advice and direction concerning the true intention and meaning of said will. Ultimately, Security seeks a construction of the Hughes will so that it may dispose of the assets of this estate in accordance with the direction of the court.

In its petition the Security National Bank & Trust Company named as defendants the following: Eugenia Woodward Willim, Anne Woodward Lundbeck, Martha Woodward Webb, Allan H. Woodward, Jr., Mary Woodward, an infant, Anne Jemison Woodward, an infant, Margaret Woodward Spencer, Joseph W. Simpson, Jean Herring Rowe, Donald Grant Herring, III, an infant, Margaret Woodward Herring, an infant, Patricia Herring Stratton, Mary Dana Young, an infant, Francis Penn Young, an infant, Hannah Young, Sarah Young, an infant, Lawrence Woodward Young, Philip W. Young, Anne B. Young Lewis, L. Woodward Franzheim, Louise Franzheim Lang, Jessie W. Franzheim Stuart, Margaret A. Woodward, Laurence Woodward McCarty, Jr., Eleanor McCarty Dionne; Edwin McMahon Singer, Administrator of the Estate of Ruth M. Woodward, deceased; The Chase Manhattan Bank, a corporation, Executor under the Last Will and Testament of Philip G. Woodward, deceased; and all unknown persons having or claiming an interest in and to the property held in trust under the Last Will and Testament of Caroline C. Hughes, deceased. A further defendant was The First National Bank of Birmingham, Trustee under the will of H. G. Woodward and Executor under the will of Joseph H. Woodward, II, which, on its motion, was granted leave to file its answer to the petition of Security.

Caroline C. Hughes executed her will on May 5, 1900 and departed this life on June 2, 1908. By the provisions of her will she devised and bequeathed to Harry C. Franzheim all of her property of every kind whatsoever to be held in trust "for the sole, separate and exclusive use and benefit of Margaret W. Hervey, the daughter of my de-

ceased daughter Gertrude W. Hervey". This trust was to exist for the benefit of the granddaughter for and during her lifetime. Subsequent thereto the will disposed of the remainder of the estate in the following language:

"In case the said Margaret should die, leaving a child or children surviving her then all of the property held under this will shall go to such child or children. If the said Margaret should die without issue surviving her then all of the property held in trust under this will, after payment of her funeral expenses, shall go to and pass to my brothers and sisters in equal shares, the share of any of them who may have died leaving children going to such children."

It is this quoted portion of the will which gives rise to this controversy.

Caroline C. Hughes had eight brothers and sisters. Three of them predeceased her, the remaining ones having died before the death of the testatrix's granddaughter, Margaret Hervey Sweeney, who died September 1, 1965, without issue surviving her. See *Security National Bank & Trust Co.* v. *William,* 151 W. Va. 429, 153 S. E. 2d 114.

The primary determination to be made in this case is the time of vesting of the estate, that is, whether the estate vested at the death of the testatrix in 1908 or in 1965 at the death of the life tenant.

Upon trial of this matter in the circuit court, the court by its order dated August 22, 1966, made the following findings: " (1) That the will of Caroline C. Hughes unequivocally indicates an intention upon the part of the testatrix that, should Margaret Hervey Sweeney die without issue, the testatrix desired to distribute her estate to her brothers and sisters or their direct descendants. (2) That the word 'children' was used conclusively by the testatrix to indicate a marked desire not only that no legacy should lapse but that there should be a per stirpes distribution in the event that Margaret Hervey Sweeney died without issue surviving her. (3) That as testatrix intended that the children, grandchildren or great-grandchildren of her brothers and sisters should have per stirpes participation

in her estate, the persons who would eventually take under her will can only be ascertained at the date of the death of Margaret Hervey Sweeney and not at the date of the death of the testatrix. (4) That under the provisions of the will the property to be distributed could not be ascertained until the time of the death of Margaret Hervey Sweeney, further indicating the intention of the testatrix that the persons who should take under her will should be ascertained at said date. (5) That the provisions of the will of Caroline C. Hughes show the clear intention of the testatrix that her residuary beneficiaries be determined upon the death of the life tenant, and that the vesting date so far as the ultimate remaindermen are concerned was the date of the death of Margaret Hervey Sweeney."

It is from this order that the appellants pursue this appeal. Two separate petitions for appeal were filed in this Court but inasmuch as both petitions involved the same issues pertaining to the Hughes will, the cases were presented and heard together. The appellants on this appeal are Edwin McMahon Singer, Administrator of the Estate of Ruth M. Woodward who died without issue in 1963; The Chase Manhattan Bank, Executor under the Last Will and Testament of Philip G. Woodward who died without issue in 1964; and The First National Bank of Birmingham as Trustee under the will of H. G. Woodward who died without issue in 1930, and as Executor of the will of Joseph H. Woodward, II, who died June 25, 1965. As noted, all appellants are fiduciaries of deceased persons who, had they survived the life tenant, would have been in the class of descendants of brothers and sisters of the testatrix. All appellees, other than Security, are living persons who are direct descendants of the brothers and sisters of Caroline C. Hughes.

It is the contention of the appellants herein that the will in question is clear and unambiguous and that application of the plain language thereof shows that the estate vested at the death of the testatrix and not at the death of the life tenant. Also, the appellants assert that equity favors early vesting unless a contrary intention shall appear by the will. It is a further contention of the appellants that the word

"children" used in the above quoted paragraph of the will means only children of the first degree.

The appellees on the other hand contend that a reading of the will in its entirety reflects the clear intention of the testatrix to cause a vesting of the estate and the determination of each legatee's share at the death of the life tenant rather than at the death of the testatrix. It is asserted by them that the title to her property was vested in the trustee during the life of the life tenant and that upon the death of the testatrix the estate be divided among her brothers and sisters or their children. They further say that until the life tenant's death, without issue surviving, the brothers and sisters or their children had nothing but a contingency or expectancy.

The assigned task on this appeal is the construction of the will of Caroline C. Hughes so as to determine when the estate conveyed thereby vested. When that determination is made, the principal problem posed in this proceeding can be readily resolved; that is, the ascertainment of those who, under the will, shall share in the distribution of the estate. Research reveals voluminous writings wherein a multitude of rules purport to offer direction and guidance in the construction of wills. It is fundamental, however, that the "ascertainment and effectuation of the intention of the testator is controlling in the construction of wills * * *." 57 Am. Jur., Wills, Sec. 1133. As expressed in the same section of that text, and in the many cases cited in the footnotes thereto, the chief object and purpose of construing a will is to determine the dominant intent of the testator. Upon making that determination, the will must be so interpreted as to carry out the intention of the testator.

The above cardinal rule, relative to the construction of wills, was stated by this Court in *Goetz* v. *Old National Bank of Martinsburg,* 140 W. Va. 422, 84 S. E. 2d 759, in this manner: "The paramount rule in construing or giving effect to a will is that the intention of the testator must be given effect, unless that intention violates some positive rule of law." See *Wheeling Dollar Savings & Trust Com-*

*pany* v. *Stewart,* 128 W. Va. 703, 37 S. E. 2d 563; *Hedrick* v. *Hedrick,* 125 W. Va. 702, 25 S. E. 2d 872; *Brookover* v. *Grimm,* 118 W. Va. 227, 190 S. E. 697; *Hooper* v. *Wood,* 97 W. Va. 1, 125 S. E. 350; *McCreery* v. *Johnston,* 90 W. Va. 80, 110 S. E. 464; 20 M. J., Wills, Sec. 77.

An examination of the Hughes will in its entirety shows an intention by the testatrix to provide primarily for her granddaughter, Margaret Hervey Sweeney and Margaret's children, if any. Caroline C. Hughes then provided for an alternate distribution of her estate in the event Margaret died without issue. Should the latter situation come to pass the testatrix provided, *"then* all of the property held in trust * * * shall go to and pass to my brothers and sisters * * *."   (Italics supplied.)   We believe that she clearly intended, by her use of the word "then" and by the manner of disposition, to keep the assets of her estate within the sphere of blood relatives, to the exclusion of strangers. Further indicative of such intent was her specific direction that "under no circumstances shall the father of the said Margaret W. Hervey be placed in charge of such funds." "The intention of the testator must be given effect in the construction of his will, unless that intention violates some positive rule of law." Point 2, Syllabus, *Mauzy* v. *Nelson,* 147 W. Va. 764.

Caroline C. Hughes, by her will, gave, devised and bequeathed to the predecessor of Security all of her property of every kind whatsoever. True, the conveyance was in trust, but it is clear that legal title to the estate was unquestionably under his or his successor's control until the death of Margaret Sweeney. This created a fee simple estate in the trustee, though determinable under the provisions of the will. See 28 Am. Jur. 2d, Estates, Sec. 28. It is clearly provided that such title in the trustee shall terminate upon the death of the granddaughter. If the granddaughter was survived by a child or children, there can be no doubt that the estate was to go to such child or children. However, the clear language of the will further provides that if Margaret should die without issue surviving her, then all of the property held in trust shall pass to the brothers and sisters of the testatrix. The use of the

word "then" with other unambiguous language in the subject will clearly reveals an intention by the testatrix to delay the vesting of the estate until after the death of her granddaughter, Margaret. Certainly, during the latter's lifetime the brothers and sisters of the testatrix had no control over the property. They could not alienate such property for the reason that legal title thereto was unquestionably in the trustee.

As asserted by the appellants, the law favors the early vesting of remainders. However, the rule in relation thereto provides that the law favors the vesting of estates at the earliest moment consistent with the terms of the instrument creating them. Once again the intention of the testatrix must be considered and is paramount. "The rule in favor of the early vesting of estates should not be applied in the interpretation of a will so as to contravene the expressed intention of the testator." Point 3, Syllabus, *Tharp* v. *Tharp*, 131 W. Va. 529, 48 S. E. 2d 793.

The early vesting rule is merely an aid applied in the construction of a will and should not be used to defeat the intention of the testator. See 28 Am. Jur. 2d, Estates, Sec. 252 et. seq. We have also considered, under the "early vesting" rule, the accepted principle that an estate will vest at the death of the testator unless a later time for vesting is expressed by words of the will or by necessary implication therefrom. We are of the opinion that Caroline C. Hughes, by her will, has clearly indicated her intention to cause the estate to vest at the death of Margaret, her granddaughter. Until that time title to the property was in the trustees; until that time the remaindermen could not be ascertained; and until the death of Margaret occurred the brothers and sisters of the testatrix, and their children, had nothing more than a mere contingency. This was not a definite remainder to such brothers and sisters. Had the testatrix left the estate to Margaret for life and at her death to the brothers and sisters, the time of vesting would have been different. This, however, was not the case. As herein noted, the testatrix conveyed legal title to a trustee for the benefit of Margaret for life, with the remainder to Margaret's child or children, if any. This is a contingency

which may or may not occur and indicates that the testatrix intended that vesting of the estate be deferred until the death of the beneficiary of the trust. See *Schaeffer* v. *Schaeffer,* 54 W. Va. 681, 46 S. E. 150.

The questions presented by the factual situation of the instant case are much the same as those presented in *Kanawha Valley Bank* v. *Hornbeck,* 151 W. Va. 308, 151 S. E. 2d 694. In that case the Court held, where pertinent, that the trustee held a fee simple defeasible, sometimes called a determinable, base or qualified fee; that the legal title to property can be at only one place at a time; and that the estate vested upon the dissolution of the trust. We agree with the principles enunciated in *Hornbeck* and find them applicable to the instant case.

The remaining question to be resolved is embodied in the appellants' contention that the term "children", used **in the will, means** issue of the first degree and does not include grandchildren or descendants of a more remote degree of the brothers and sisters of the testatrix. It is well established that words used in a will should not be confined to their strict meaning when it is clear from a reading of the entire instrument that a more flexible connotation was intended. This principle was succinctly expressed in Point 8 of the Syllabus of *Weiss* v. *Soto,* 142 W. Va. 783, 98 S. E. 2d 727, as follows: "In the construction of a will technical words are presumed to have been used in a technical sense and should ordinarily be given their strict meaning; but this rule is not absolute and when it appears from the context that another meaning was intended such words will not be applied in their technical sense."

Concurring in this view, the Court, in *Ball* v. *Ball,* 136 W. Va. 852, 69 S. E. 2d 55, said that a consideration of all the language used in the will revealed that the words "any funds", in accordance with the testator's intent, meant both real and personal property. See also *Stephenson* v. *Kuntz,* 131 W. Va. 599, 49 S. E. 2d 235; *In re Conley,* 122 W. Va. 559, 12 S. E. 2d 49; *Maddy* v. *Maddy,* 87 W. Va. 581, 105 S. E. 803; *James* v. *Peoples Nat. Bank of Leesburg,* 178 Va. 398, 17 S. E. 2d 387; 4 Bowe-Parker: Page on Wills, Sec. 30.21.

As noted by the Court in *Davis Trust Company* v. *Elkins,* 114 W. Va. 742, 175 S. E. 611, "* * * it is fundamental that the term 'children' in its primary sense and in the absence of qualifying words and provisions means issue of the first degree." However, the Court, reflecting the majority view, hastened to add that such meaning may be broadened to include grandchildren if a reading of the will as a whole shows that the testator so intended. See Point 4 of the Syllabus of *Maddy* v. *Maddy,* 87 W. Va. 581, 105 S. E. 803. In the instant case the testatrix provided that in the event her granddaughter should die without issue surviving her "then all of the property * * * shall go to and pass to my brothers and sisters in equal shares, the share of any of them who may have died leaving children going to such children." The distribution of her estate in equal shares to her brothers and sisters and particularly her reference to the "share of any of them" clearly connotes a per stirpes distribution. In such distribution the distributees take by stocks or representation.

We are of the opinion that a consideration of the whole will reflects an intention on the part of Caroline C. Hughes to include, as participants in the distribution of her estate, not only the children of her brothers and sisters but also all lineal descendants of such brothers and sisters. The circumstances of the testatrix and the intended beneficiaries at the time of the execution of the will must be considered. At that time the granddaughter of the testatrix, the primary beneficiary, was a small child. It was unlikely that the testatrix believed that any of her brothers and sisters would survive her granddaughter. Furthermore, several of her brothers and sisters had children at that time. All of these facts, together with her declared intention to provide for her granddaughter and her granddaughter's issue, if any, and alternatively, for her brothers and sisters and their children, show as heretofore indicated that the testatrix desired to keep her estate within the bounds of blood relatives. Furthermore, she placed all of the assets of her estate in the hands of a trustee for the benefit of her granddaughter and expressly provided that under no circumstances shall the father of her granddaughter be placed in charge of the estate.

In view of the foregoing, the judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*