SECURITY NATIONAL BANK & TRUST COMPANY, *etc.,*
*Trustee, etc.*

*v.*

EUGENIA WOODWARD WILLIM, *et al.*

(No. 12961)

Submitted February 2, 1971.      Decided March 23, 1971.

2

*Cather, Renner & Parker, Charles V. Renner,* for appellant.

*McCamic & McCamic, Jeremy C. McCamic, Schmidt, Laas, Schrader & Miller,* for appellees.

CALHOUN, JUDGE:

This case is on appeal from the action of the Circuit Court of Ohio County in entering an order on December 26, 1969, by which the court directed that the appellees, Jay T. McCamic and Henry S. Schrader, each be awarded the sum of $12,000 as attorney fees to be paid from the distributive share of Jean Herring Rowe, the appellant, as a beneficiary under the will of Caroline C. Hughes. It is necessary to state the background facts in order properly to present for decision the question whether the trial court acted properly in awarding and in directing the payment of the attorneys' fees.

By her will, Caroline C. Hughes placed her estate in trust for the benefit of Margaret W. Hervey, daughter of Gertrude W. Hervey, the deceased daughter of the testatrix. The will provided that if Margaret W. Hervey, the life tenant, should die "without issue surviving her", all the property placed in trust by the will would pass to the brothers and sisters of the testatrix in equal shares, "the share of any of them who may have died leaving children going to such children." The testatrix died in 1908. Margaret W. Hervey married Julian Sweeney, and in 1931 this married couple adopted a female child who was given the name of Patti Sweeney. Margaret W. Sweeney, the

life tenant, died in 1965. She was survived by her adopted daughter but by no natural-born child.

Certain aspects of the will and of the trust estate have been before this Court heretofore on three separate appeals from the Circuit Court of Ohio County.

Security National Bank & Trust Company, the trustee designated by the will, instituted in the Circuit Court of Ohio County a civil action for the purpose of construing the will. In the complaint filed in the civil action, the trustee alleged that Margaret W. Sweeney, the life tenant, died without issue. The persons who were made parties defendant to the civil action were the descendants of the deceased brothers and sisters of the testatrix. Patti Sweeney, the adopted child, became mentally incompetent. Wheeling Dollar Savings & Trust Company, as committee for the incompetent adopted child, filed an answer in the civil action, alleging that the adopted child was the surviving child of Margaret W. Sweeney, the life tenant, and that, therefore, under the terms of the will, she was entitled to receive the trust estate. Gilbert S. Bachmann, an attorney of Wheeling, Ohio County, was counsel for the committee for the incompetent. The civil action, in these circumstances, involved a contest between the committee for the adopted daughter and the descendants of the brothers and sisters of the testatrix. The trial court held that Patti Sweeney, as an adopted child, was not "issue" of the life tenant and that, therefore, she was not entitled to receive the trust estate under the provisions of the will. Upon an appeal, the judgment of the trial court was affirmed by this Court. *Security National Bank & Trust Company* v. *Willim*, 151 W.Va. 429, 153 S.E.2d 114.

In the civil action referred to above, Jay T. McCamic and Henry S. Schrader appeared as counsel for some of the descendants of the brothers and sisters of the testatrix, all of whom prevailed by the decision of the trial court which was affirmed by this Court. Jean Herring Rowe, one of the group of descendants of the brothers and sisters of the testatrix, though a party defendant to the civil

action, was not represented by counsel employed by her, either in the trial court or in this Court.

Security National Bank & Trust Company, as trustee designated by the will, subsequently instituted a second civil action in the Circuit Court of Ohio County by which it sought further direction in relation to the proper construction of the provisions of the will. The primary question involved in the second civil action was whether, under the provisions of the will, the estate vested and the beneficiaries of the trust estate were to be determined as of the date of the death of the testatrix in 1908 or at the time of the death of the life tenant in 1965. The trial court held that the will disclosed "the clear intention of the testatrix that her residuary beneficiaries be determined upon the death of the life tenant, and that the vesting date so far as the ultimate remaindermen are concerned was the date of the death of Margaret Hervey Sweeney." On appeal, this Court affirmed the judgment of the trial court. *Security National Bank & Trust Company* v. *Willim*, 152 W.Va. 27, 31, 158 S.E.2d 715, 718.

Jay T. McCamic and Henry S. Schrader appeared in the trial court and in this Court as counsel for certain beneficiaries of the estate who prevailed in the second case. If it had been held in that case that the beneficiaries were to be determined as of the date of the death of the testatrix, the estate would have been distributed on the basis of one-seventh portions. The decision that the beneficiaries were to be determined as of the date of the death of the life tenant resulted in a division on the basis of one-fifth portions or shares. To this extent, the beneficiaries of the estate represented by Jay T. McCamic and Henry S. Schrader were benefited in the distribution of the trust estate. Jean Herring Rowe benefited in like manner from the judgment of the trial court and the affirmance thereof by this Court. She was not represented in this second case, either in the trial court or in this Court, by counsel selected and employed by her.

By a petition filed in the Circuit Court of Ohio County by Jay T. McCamic and Henry S. Schrader, in their own names as individuals and in the names of their respective law firms, they alleged that Jean Herring Rowe benefited by the services rendered by them for and in behalf of their clients in the trial court and in this Court in the two cases previously referred to and, in their petition, they prayed that the trial court "allow unto them reasonable attorney fees for services rendered on behalf of said Jean Herring Rowe, and that such fees as the Court may allow be charged against the proportional share of the said Jean Herring Rowe."

The case was submitted for decision in the trial court upon the petition; upon an answer to the petition filed by and in behalf of Jean Herring Rowe; upon her deposition taken at Grants Pass, County of Josephine, Oregon, of which state she is a resident; upon stipulations entered into at the bar of the court by Henry S. Schrader, Jay T. McCamic, Charles V. Renner as counsel for Jean Herring Rowe, and by George G. Bailey as counsel for the trustee; and upon the testimony of Attorneys McCamic, Schrader and Bailey taken at the bar of the court.

By an order entered on December 26, 1969, the trial court found that the distributive share of Jean Herring Rowe in the trust estate, by agreement of counsel, was considered to have a value of $400,000; that she benefited from the legal services performed in the two cases by Messrs. McCamic and Schrader in behalf of their clients; and that Messrs. McCamic and Schrader, by virtue of arms length negotiations and consequent agreements with their several clients, had received fees averaging six percent of the amounts received severally by such clients. The court held that such fees "have weight in the consideration of the fairness and reasonableness of the amount sought by each of the petitioners"; and that "a fee of 3% to each petitioner of the distributive share of Jean Herring Rowe is fair and reasonable." Accordingly, the trial court, by that order, awarded to "Messrs. McCamic and Schrader each a fee of three percent (3%) of

$400,000.00 to be paid from the funds belonging to Jean Herring Rowe representing her distributed share of the trust assets held by Security National Bank & Trust Co. * * *." It is from this action of the trial court that Jean Herring Rowe has been granted the appeal to this Court.

From the entire trust fund held by Security National Bank & Trust Company as trustee designated by the will, the trial court awarded to George G. Bailey a fee of $75,000 for his services as attorney for the trustee. The trial court awarded to Gilbert S. Bachmann a fee of $2,000 to be paid from the entire trust fund for his services in representing the committee for Patti Sweeney, in the trial court and in this Court in the first case.

In *Security National Bank & Trust Company* v. *Willim*, 153 W.Va. 299, 168 S.E.2d 555, involving the third appeal, this Court directed the trial court to make an award of reasonable attorney fees to be paid from the entire trust estate to Attorneys Charles P. Mead and Ronald W. Kasserman for their services in representing certain clients who opposed the claim of the adopted daughter to the entire trust estate in the first case of the series. The clients represented by Attorneys Mead and Kasserman were fiduciaries of two extinct lines of descendants of brothers and sisters of the testatrix. By the decision in the second case that distributees of the trust estate were to be determined as of the date of the death of the life tenant, these clients of Attorneys Mead and Kasserman were excluded from receiving any portion of the trust estate. This Court, in its opinion in this third case, stated that the legal services thus performed by Attorneys Mead and Kasserman in the first case "promoted the interests of the parties who finally prevailed."

Pursuant to the decision of this Court in the third case, the trial court, by an order entered on September 2, 1969, awarded to Attorneys Mead and Kasserman an attorneys' fee of $10,000 to be paid from the trust estate created by the will. By the same order, the trial court made awards to counsel, to be paid from the trust estate,

for services rendered by them in behalf of their respective clients in the trial court and in this Court in resisting the claims of Attorneys Mead and Kasserman for attorneys' fees to be paid from the trust estate as stated in this Court's opinion in *Security National Bank & Trust Company* v. *Willim*, 153 W.Va. 299, 168 S.E.2d 555. The awards thus made by the trial court were as follows: Jay T. McCamic, an attorney fee of $1,200, plus expenses in the sum of $154.16, or a total of $1,354.16; Henry S. Schrader, an attorney fee in the amount of $1,200, plus expenses in the sum of $121.11, or a total sum of $1,321.11; and George G. Bailey, an attorney fee of $1,200, plus expenses in the sum of $190.44, or a total sum of $1,390.44.

By an order entered on December 23, 1966, the trial court awarded the sum of $1,750 to be paid from the trust estate to each of three attorneys who had been appointed previously by the court to act as guardians ad litem for certain infant defendants in the initial action instituted by the trustee for the purpose of having a judicial construction of the will.

Following is a summary of awards made by the trial court to be paid from the trust estate prior to distribution thereof among the beneficiaries or distributees:

| | |
|---|---|
| George G. Bailey, | $75,000.00 |
| Gilbert S. Bachmann, | 2,000.00 |
| Three guardians ad litem | 5,250.00 |
| Messrs. Mead and Kasserman, | 10,000.00 |
| Henry S. Schrader, | 1,321.11 |
| Jay T. McCamic, | 1,354.16 |
| George G. Bailey, | 1,390.44 |
| Total | $96,315.71 |

The distributive share of Jean Herring Rowe, the appellant, was one-fifteenth of the trust estate. Her distributive portion was therefore reduced in the amount of $6,421.04 by reason of the court awards of attorneys' fees and compensation to three guardians ad litem.

The record discloses that Attorneys McCamic and Schrader, particularly Attorney McCamic, or the law firms with which they were associated, represented practically all the beneficiaries of the trust estate, except Jean Herring Rowe, and that these beneficiaries received a total of approximately $4,000,000. The trial court found that Messrs. McCamic and Schrader, as a result of "open arms negotiation with the beneficiaries of the Caroline C. Hughes Will whom they represented, agreed on an average of 6% of the share to be distributed, * * *."

From the testimony of Jay T. McCamic, it appears that the appellees, Messrs. McCamic and Schrader, received a total of approximately $240,000 as attorneys' fees from clients whom they represented. Mr. McCamic testified that the total amount received by the appellees was less than $240,000 because, in some instances, he shared fees with other attorneys with whom he was associated, and also because one of his clients, who received one-tenth of the trust estate, was "an old-time client" and that the basis of the attorney fee paid by this client "would be entirely different." Regardless of what may have been the exact amount of attorneys' fees received by the appellees from their clients, it is clear that the attorneys' fees thus received by the appellees were determined upon a contractual basis as a consequence of arms length negotiations. In other words, the appellees were paid by their respective clients for the legal services they contracted to render and, in addition, they were awarded attorneys' fees by the trial court for their services performed in the third case appealed to this Court.

In the first case of the series, it was alleged in the complaint filed in behalf of the trustee that Margaret W. Sweeney, the life tenant, died without issue. In that case, both in the trial court and in this Court, George G. Bailey, as attorney for the trustee, by brief and oral argument, took the position that the adopted child was not "issue" of the life tenant and that, therefore, she was not entitled to receive the trust estate. The same position was taken by answers filed by the three attorneys who appeared as

guardians ad litem for infant parties defendant in that case. Their positions in this respect were consistent with the positions taken in that case by Attorneys McCamic, Schrader, Mead and Kasserman in behalf of their respective clients. The only attorney who took a position to the contrary in that case was Gilbert S. Bachmann as attorney for the Committee for Patti Sweeney, the adopted daughter.

In the second case, which involved the question whether the distributees or beneficiaries of the estate were to be determined as of the date of the death of the testatrix or as of the date of the death of the life tenant, Attorney Bailey as counsel for the trustee, Attorneys McCamic and Schrader and the three guardians ad litem all took the position, ultimately sustained by this Court, that the distributees or beneficiaries of the trust estate were to be determined as of the date of the death of the life tenant. Attorneys Mead and Kasserman were the only attorneys who unsuccessfully contended in the second case that the distributees or beneficiaries were to be determined as of the date of the death of the testatrix.

The position of Messrs. McCamic and Schrader in this case in their assertion of a right to a court award of attorneys' fees to them differs from all other similar assertions made in the course of the protracted litigation in relation to the Caroline C. Hughes will and trust estate in that all prior court awards have been made from the entire trust estate on the theory that the trust estate, and hence all the distributees thereof, have benefited from the services for which the court awards have been made. The claims of Attorneys McCamic and Schrader in this case are not asserted against the entire trust estate, and hence against all the distributees, but rather against an individual distributee or beneficiary, Jean Herring Rowe.

Mr. McCamic testified that he represented Patricia Stratton, a sister of Jean Herring Rowe, the appellant; that Patricia Stratton received one-fifteenth of the trust

estate; and that she paid him an attorney fee amounting to six percent of her distributive share.

Jean Herring Rowe, the appellant, testified by deposition that she was notified in March, 1966, of the institution of the first civil action in the Circuit Court of Ohio County; that she later learned that her sister had employed Attorney Jay T. McCamic to represent her; that her father and sister then lived in North Carolina; that, on June 21, 1966, she received a letter from her father stating that the appellant's sister, Patricia Stratton, had received from Attorney McCamic a "handwritten note" which, according to Mrs. Rowe's testimony, was substantially as follows:

> "Your sister is the only unrepresented one who has not agreed to pay fees. A proceeding in court will increase the amount. Do you think a letter from me to Mrs. Rowe will be helpful? What do you suggest? Sincerely, Jay T. McCamic."

Mrs. Rowe testified that her father enclosed with his letter a typewritten form of a letter directed to Attorney McCamic with a request that she sign it and forward it to Mr. McCamic. The effect of the form letter was to request Mr. McCamic to represent Mrs. Rowe as her attorney in connection with the Caroline C. Hughes will and trust estate. Mrs. Rowe did not sign and mail the proposed letter as requested by her father. She testified that she did not know that Attorney McCamic was expecting her to pay an attorney fee until he "filed the suit" against her in June, 1968; and that she had never heard of Attorney Schrader or of his law firm until that time. She testified that, on or about August 3 or 4, 1969, she received from her sister, Mrs. Stratton, a letter which Mrs. Stratton had received from Attorney McCamic in which he made the following statement: "I want to be completely prepared. I have not appeared for and do not represent your sister, Mrs. Rowe. I can make no demand upon her behalf."

It is undisputed that Mrs. Rowe did not employ any attorney to represent her in relation to the Hughes will and trust estate until after Attorneys McCamic and Schrader filed their petition by which they prayed that the Circuit Court of Ohio County enter an order directing payment of attorneys' fees to them from Mrs. Rowe's distributive share. When asked why she did "nothing" after learning of the litigation instituted by the trustee, she replied: "Because it was the bank's job as Trustee to decide whether to divide it in five or seven portions."

By brief and oral argument in this Court, counsel for Jean Herring Rowe, the appellant, recognizes that there is adequate precedent for allowance of attorneys' fees to be paid from a trust fund in certain circumstances, but he contends that the present case is "novel" for the following reasons:

 1. The appellant "openly rejected individual representation and was content to rely upon the legal theory and work of counsel for the Security National Bank & Trust Company, as Trustee."

 2. The legal services performed by the appellees were "repetitive and cumulative."

 3. The appellees seek recovery on a contingent fee basis, rather than upon a quantum meruit basis.

 4. The fees awarded to the appellees by the trial court are "exorbitantly excessive."

The following cases are cited in the brief of the appellees and relied upon by them in support of their assertion of a right to be paid attorneys' fees from the portion of the trust estate which belongs to Jean Herring Rowe: *Mills* v. *Electric Auto-Lite Company,* 396 U.S. 375; *Security National Bank & Trust Company* v. *Willim,* 153 W.Va. 299, 168 S.E.2d 555; *Capehart* v. *Church,* 136 W.Va. 929, 69 S.E.2d 127; *Stafford* v. *Bishop,* 98 W.Va. 625, 127 S.E. 501; *Crumlish's Adm'r* v. *Shenandoah Val. R. Co.,* 40 W.Va. 627, 22 S.E. 90. We are of the opinion that all these cases are distinguishable from the instant case.

As we have stated previously, in *Security National Bank & Trust Company* v. *Willim, supra,* the Court authorized an attorneys' fee to be paid to Attorneys Kasserman and Mead *from the trust estate* on the ground that legal services performed by them in opposing the claim of the adopted daughter benefited *the trust estate.* In *Crumlish's Adm'r* v. *Shenandoah Val. R. Co., supra,* the Court held that a special receiver was authorized to contract for payment of reasonable attorney fees for necessary services performed in the execution of the receivership. The fifteenth point of the syllabus of that case is as follows: "The practice of allowing to trustees, complainants and receivers, and their counsel, large and extravagant counsel fees and commissions, payable out of trust funds under the control of the court, commented on and disapproved." To the same effect as the language quoted immediately above, see *Beuter* v. *Beuter,* 122 W.Va. 103, 108, 7 S.E.2d 505, 507; *Woods* v. *McClain,* 112 W.Va. 612, 615, 166 S.E. 279, 280. *Stafford* v. *Bishop, supra,* involved a case in which an executor of the estate of a deceased person had engaged the services of an attorney but without a contract or agreement as to the amount of an attorney fee to be paid. The Court's decision dealt primarily with the question of the basis of determination of a proper attorney fee on a quantum meruit basis. Substantially the same legal propositions are established by Code, 1931, 30-2-15 and by *Board of Trustees of the Lewis Prichard Charity Fund* v. *Avis and Angel,* 121 W.Va. 686, 6 S.E.2d 9. The decision of the Court in *Capehart* v. *Church, supra,* is summarized in the single syllabus point which is as follows: "An attorney's lien for professional services may not be enforced in equity against a stranger to the litigation in which such services were rendered." In *Mills* v. *Electric Auto-Lite Company, supra,* the Supreme Court of the United States discussed the general rule that attorneys may be awarded reasonable compensation for legal services performed in producing or in preserving a "common fund." This general rule has been applied in awarding attorneys' fees from the trust fund involved in the instant case. In the *Mills* case (396 U.S. at 393-397), the Court authorized an

award of attorneys' fees for services performed in litigation which conferred a substantial benefit on members of an ascertainable "class". The rule thus applied is similar in effect to the rule relating to the creation or preservation of a "common fund".

We are of the opinion that all the cases relied upon by the appellees and discussed in the preceding paragraph are inapposite to the question presented for decision in this case. In their petition filed in the trial court, the appellees assert that Jean Herring Rowe has benefited by services rendered by the appellees in behalf of their respective clients in the trial court and in this Court; that she "elected to stand by idly and take advantage of the efforts" of the appellees in behalf of their clients; and that for "Mrs. Rowe to have a 'free ride' at the expense of her co-defendants is inequitable."

Admittedly, Mrs. Rowe did not employ either of the appellees as an attorney. She refused to employ Attorney McCamic upon the suggestion of her father. The record discloses that she deliberately elected not to employ an attorney to represent her in connection with the Hughes will and trust estate. She was aware of the fact that her sister had employed Attorney McCamic. In her testimony, she expressed, or at least clearly implied, her deliberate decision to rely upon the trustee to make a construction of the will and a distribution of the trust estate according to law and according to court direction.

Inasmuch as the record discloses that Mrs. Rowe deliberately elected not to employ an attorney, and inasmuch as the appellees, in the present case, are not asserting a claim against the "common fund", the trust estate, the appellees, in essence, appear to be asserting a claim against Mrs. Rowe on the basis of an implied contract to pay the reasonable value of legal services performed in her behalf or for her benefit. Our attention has not been called to any legal authority or precedent for recognizing an implied contract in the circumstances of this case.

The exclusionary character of the "common fund" rule is illustrated by the language of the second point of the syllabus of *Roach* v. *Wallins Creek Collieries Company*, 111 W.Va. 1, 160 S.E. 860, which is as follows:

> "Except in rare instances, the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the benefit of all."

To the same effect, see *Security National Bank & Trust Company* v. *Willim*, 153 W.Va. 299, pt. 2 syl., 168 S.E.2d 555.

A contract of employment, expressed or implied, is necessary in order to render one liable to pay for the services of an attorney. Principles relating to attorneys' fees based upon an implied contract are discussed in 7 C.J.S., *Attorney and Client*, Section 175, page 1041. A portion of that discussion, appearing on pages 1042 and 1043, is as follows:

> "Thus, where there is even slight proof of an employment of the attorney by the client, the fact that the latter stood by without objection and allowed the attorney to render valuable services in his behalf will estop him to deny the fact of employment. The acquiescence must be such as presumes volition on the part of the person sought to be charged, however, and there is no acquiescence where he has no choice but to avail himself of the efforts made by the attorney.

> "On the other hand, it does not always follow that, because one receives the benefit, directly or indirectly, of the services of another, the law implies a contract to pay therefor. Thus, where the attorney, in carrying on the action does so for his own benefit and not for the nominal party to the action, the fact that such nominal party knows of his course and does not object will not make him liable for fees; nor does a tacit acceptance of an attorney's services raise a promise to pay therefor, when the services were rendered after the distinct refusal of defendant to avail himself of,

or pay for, such services. So, where one of several parties, all of whom are equally interested in a cause, employs an attorney to conduct the case for him, and the benefit of such services from the nature of the case extends to all the other interested parties, the other parties, merely by standing by and accepting the benefit of such services without objection, do not become liable for the attorney's fees. In such case it is held that liability cannot be imposed on the theory of unjust enrichment. These rules are particularly applicable where the other parties benefited are minors. If, however, the parties not directly employing the attorney, after becoming aware that he looks to them for his compensation, fail to make objection or to declare their nonliability, they are liable."

To the same effect, see 7 AM. JUR. 2d, *Attorneys at Law,* Section 205, page 166.

For court decisions in line with the legal propositions stated in the quotation appearing immediately above, particularly in relation to implied contracts for payment of attorneys' fees, reference is here made to the following cases: *Caldwell* v. *Missouri State Life Ins. Co.,* 148 Ark. 474, 230 S.W. 566; *Commercial Union Insurance Company* v. *Scott,* 116 Ga. App. 633, 158 S.E.2d 295; *Felton* v. *Finley,* 69 Idaho 381, 209 P.2d 899; *O'Doherty & Yonts* v. *Bickel,* 166 Ky. 708, 179 S.W. 848; *Jones* v. *Sitterly,* 190 Okla. 36, 120 P.2d 341; *Avery* v. *Sielcken-Schwarz,* 5 N.J. Super. 195, 68 A.2d 635; *In the Matter of Carsons Jamaica, Inc.* v. *Boyland,* 19 Misc. 2d 778, 191 N.Y.S.2d 264; *In re Loomis,* 273 N.Y. 76, 6 N.E.2d 103.

We are of the opinion that the appellees have failed to establish any basis of recovery of attorneys' fees from the appellant and therefore the judgment of the Circuit Court of Ohio County is reversed.

*Reversed.*