Michael T. Roach *et al., v.* Wallins Creek Collieries Company *et al.,* Maryland Casualty Company, *Appellant*

(No. 6463)

Submitted February 25, 1931.   Decided April 14, 1931.
(Rehearing denied October 5, 1931.)

*Fred O. Blue,* and *D. H. Hill Arnold,* for appellant.
*Poffenbarger & Poffenbarger,* for appelles.

LITZ, PRESIDENT:

The defendant, Wallins Creek Collieries Company, is a Delaware corporation. It formerly owned and operated coal mining plants in Kentucky, while maintaining its principal office at Charleston, West Virginia. October 8, 1923, numerous miners in its employ recovered judgments against it in the circuit court of Harlan County, Kentucky, for alleged wages due them, in the aggregate of $18,000. November 7th, following, the appellant, Maryland Casualty Company, became surety on supersedeas bonds executed by the Collieries Company in the process of perfecting appeals from the judgments to the Kentucky Court of Appeals. The appeals being later dismissed as improvidently awarded (*Wallins Creek Collieries Company* v. *Marshall,* 217 Ky. 647, 290 S. W. 519), judgments were recovered on the bonds against the principal and surety. *Maryland Casualty Company* v. *Marshall,* 226 Ky. 62, 10 S. W. (2d) 485. Having a very large general indebtedness, the Collieries Company (in 1924) conveyed its tangible assets to Harlan-Wallins Coal Corporation in consideration of 4750 non-par shares of the capital stock of the Coal Corporation and the assumption by it of specific indebtedness of the Collieries Company amounting to $570,000. August 11, 1925, the stockholders of the Collieries Company passed a resolution authorizing its directors to sell, transfer, pledge or encumber so much of its assets as in their opinion might be necessary to secure funds sufficient to pay, settle and adjust its remaining obligations. Pursuant to the authority thus conferred, the directors, by resolution of September 26th, following, ratified and confirmed a tentative agreement (executed October 12, 1925), between the Collieries Company, party of the first part, and Caldwell & Company and American National Company, corporations, and Joe B. Palmer, doing business under the firm name of Joe B. Palmer Company, parties of the second part, designated "Bankers Agreement," whereby the parties of the second part agreed to purchase of the party of the first part

all or any of the 4759 shares of stock owned by it in the Coal Corporation, and the party of the first part agreed to sell to the parties of the second part 2815 of said shares, at $20.00 a share. The directors, by the same resolution, authorized the settlement of a claim of sixty thousand dollars asserted against the company by B. K. Littlepage (a stockholder and director) for the sum of $31,263.80. Pursuant also to said resolution another contract was entered into, October 12, 1925, between the Collieries Company and the American Trust Company, a corporation, with its principal offices in Nashville, Tennessee, trustee, whereby the said 4750 shares of stock were delivered to the trustee with authority to transfer 2815 shares thereof and collect the purchase price therefor under the Bankers Agreement. The contract states the items of admitted indebtedness against the Collieries Company, aggregating $29,119.49, and disputed claims asserted against it as follows: $31,263.80 in favor of B. K. Littlepage for legal services; $20,000 in favor of Jesse Blanton for arrears under a lease of coal in Kentucky; $20,000 in favor of the United States Government for income taxes. It authorized the trustee to set apart a fund of $4,000 from the price of the stock ''for the purpose of paying attorney fees, legal expenses and other expenses necessarily incurred in the defense of certain law suits against the Company, and the general conduct of its affairs.'' It further authorized the trustee to pay checks and drafts issued by the Collieries Company in settlement of its admitted indebtedness; to pay the claim of B. K. Littlegape after final judgment, or, at its discretion, upon advice of the directors of the company; to resist the claims of Blanton, the miners and the United States Government and pay the same only after judgment or adjustment by the company and the sale of a sufficient amount of stock to secure the necessary fund; and to employ agents and attorneys in executing the trust. The contract also states that its purpose is ''to protect the creditors of the company and its stockholders and to provide a sale for the shares of stock owned by it in the Harlan-Wallins Coal Corporation which constitutes its sole and only assets.'' It further provides: ''This agreement and the deposit of said

stock or such part of same as remains unsold, shall continue until the payment, discharge, release or other acquittances of all claims now or hereafter legally asserted against the company.'' Performance under each contract proceeded promptly.

This suit was instituted November 21, 1925, by Michael T. Roach, J. K. Roach, H. A. Maffey, Margaret Maffey, H. C. Schernorhorn, Ether Schernorhorn, and V. H. Knopp, minority stockholders of the Wallins Creek Collieries Company, against Wallins Creek Collieries Company, Old Straight Creek Coal Corporation, B. K. Littlepage, B. K. Littlepage, trustee, and American Trust Company, trustee. The bill alleges the sale of the assets of the Wallins Creek Collieries Company to the Harlan-Wallins Coal Corporation; the issue to B. K. Littlepage, trustee for the Collieries Company, of 4750 shares of non-par stock in the Coal Corporation, and assumption by it of indebtedness of the Collieries Company in the amount of $570,000; a demand upon B. K. Littlepage, trustee, to distribute the 4750 shares of stock in the Coal Corporation to the stockholders of the Collieries Company; the execution of the Bankers Agreement and Trust Agreement; the institution of an action by B. K. Littlepage in the circuit court of Kanawha County, West Virginia, against the Collieries Company, August 25, 1925, in the amount of sixty thousand dollars for alleged legal services; the execution by the officers of the Collieries Company to Littlepage, September 26, 1925, of its promissory note payable ten days from date for $31,263.80 in settlement of his claim; the institution of an action by Old Straight Creek Coal Corporation as assignee of Littlepage against the Collieries Company on said note; a default judgment therein November 3, 1925. It alleges, substantially, also that the note was issued in settlement of a fraudulent claim asserted by Littlepage against the company as the result of a conspiracy between him and other directors to defraud the stockholders; and that the action had been brought in the name of Old Straight Creek Coal Corporation under a pretended assignment to it and judgment suffered by the officers of the Collieries Company in consummation of the said con-

spiracy. The bill prays that the American Trust Company, trustee, be prohibited from selling more than 2815 shares of said stock until further order of the court; that the stock remaining in its hands be transferred, delivered, hypothecated or sold under the orders of the court: that the Old Straight Creek Coal Corporation and B. K. Littlepage be enjoined from enforcing said judgment; that the business of the Collieries Company be liquidated, the corporation dissolved and a receiver appointed to take charge of and administer its assets; that the American Trust Company, trustee, be enjoined from using any of the proceeds from the sale of the 2815 shares of stock not required for payment of valid and existing indebtedness of the company until the further order of the court.

December 19, 1925, an order was entered upon the bill, the joint and several demurrer and answer of Wallins Creek Collieries Company, Old Straight Creek Coal Corporation, B. K. Littlepage, B. K. Littlepage, trustee, exhibits and affidavits filed therewith and the acceptance of service of process by American Trust Company, appointing Joe L. Silverstein (of counsel for plaintiffs) and Robert H. C. Kay (of counsel for defendants) special receivers for the Collieries Company; and approving the Bankers Agreement and Trust Agreement. The order also expressed the opinion of the court that the remaining shares of stock in the hands of the trustee should be disposed of by it under the Bankers Agreement. Upon motion of Old Straight Creek Coal Corporation, acquiesced in by the parties and the receivers, an order was entered January 11, 1926, directing the trustee to pay the alleged fraudulent judgment out of the funds in its hands. The order also directed the trustee to transfer the remaining 1935 shares of stock to the purchasers under the Bankers Agreement. Why the vigorous charges of fraud against said judgment (the only real complaint in the bill) were so soon waived by the plaintiffs and its payment immediately directed, is undisclosed by the record. Mr. Leo Loeb, of counsel for defendant, stated that he had understood "the proceeds" were used "for the joint benefit of Mr. Littlepage and other stockholders in a collateral matter."

The trustee was permitted to continue its authority under the trust agreement by reducing the assets and paying claims under the direction of the court; no assets passing through the hands of the receivers. The claim of the government was settled for $18,814.31, exclusive of interest, through the law firm of Roper, Hagerman, Hurry & Parks, of Washington, D. C., who received a fee of $3,250.00. Fees amounting to $1,750.00 were also paid Kentucky attorneys who represented the company in the Blanton and the miners' claims. Prior to the final decree of May 25, 1928, allowance to the receivers and attorneys in the case, excluding expenses of the former, follow: March 29, 1926, B. K. Littlepage, expenses as counsel for receivers, $594.00; May 11th, B. K. Littlepage, expenses as counsel for receivers, $650.00; August 4th, B. K. Littlepage, expenses as counsel for receivers, $555.00; August 16, 1926, R. H. C. Kay, receiver, $1,000.00, Joe L. Silverstein, receiver, $1,000.00; August 20, 1926, Sam Silverstein, as counsel for American Trust Company, $200.00; August 29, 1926, B. K. Littlepage, attorney's fee, as counsel for receivers, $3,000.00. The following allowances are decreed by the final order: R. H. C. Kay, further allowance as receiver, $1,500.00; Joe L. Silverstein, further allowance as receiver, $1500.00; Staige Davis, allowance as attorney for receivers, $500.00; Leo Loeb, as counsel for receivers, $500.00; Staige Davis, as attorney for plaintiff, $2500.00; Leo Loeb, as attorney for defendants, $2500.00; Sam Silverstein, further allowance as counsel for American Trust Company, $250.00; Bass, Berry & Simms, Nashville, Tennessee, as attorneys for American Trust Company; $1,000.00; American Trust Company, $750.00. The Maryland Casualty Company who has paid or as surety is liable for the judgments in favor of the miners amounting to $18,000, with interest from 1923, intervened by petition May 10, 1927. It, as appellant, insists that as the receivership has served no useful purpose to the creditors the allowances to the receivers and attorneys from the fund which would otherwise have gone to the creditors under the arrangement with the American Trust Company, now carried out, are unauthorized or excessive. The defendants join issue with this contention, and rely especially upon motions to dismiss the appeal. The

formal defendants (named in the bill) moved to dismiss the appeal because the original process, although issued within ten months from the final decree, was not returned or served until after the return day and that the alias following was not issued for some weeks later. The informal defendants (attorneys) moved to dismiss because process as to them was not issued until more than ten months after the decree. The contentions of the defendants in relation to the motions are (1) that original process on an appeal or writ of error must issue within ten months from the final decree or judgment, and (2) that notwithstanding the issuance of original process within that time an alias can be issued only on the return day thereof, upon the theory that a hiatus or break in the order of process works a discontinuance of the appeal or writ of error. Section 2, chapter 124, Code 1923, provided that "process from any court, whether original, mesne, or final, may be directed to the sheriff of any county, * * * returnable, within ninety days after its date, to the court on the first day of the term, or in the clerk's office to the first Monday in a month, or to some rule day, * * *." By section 3, it was provided that "if at the return day of any process it be not returned executed, an alias or other proper process may be issued without waiting (where the first process is returnable to a term) for the subsequent process to be awarded at rules." Interpreting a similar statute in Virginia, Judge Burks, in section 188 of his work on Pleading and Practice, stated: "The language of the statute is: 'If, at the return-day of any process, it be not returned executed, an alias or other proper process may be issued, etc.' But, when must this alias or pluries be issued? Must it issue at that rules, or may it issue then or thereafter? The question becomes important chiefly as affecting the bar of the statute of limitations. It would seem that process to commence a suit must be continuous until a return of 'executed,' is obtained, and therefore that the alias or pluries summons can only issue at the rules at which the previous process was returned unexecuted; that a failure then to issue the alias or pluries would cause a hiatus in the action and operate a discontinuance; and that to hold otherwise would be to permit a

plaintiff to continue his case indefinitely at the rules and save the running of the statute of limitations for any length of time he chose.''·

The rule contended for, applying to *nisi prius* courts, is not, in our opinion, applicable to appellate procedure. The issuance of summons by such courts alone brings the suit into being. It is, therefore, pending only so long as the summons is alive, while cases in the Supreme Court of Appeals come into being by the awarding of the appeal or writ of error, and not by the issuance of summons to the appellees or defendants in error. Section 13, chapter 135, Code 1923, provided: ''Every appeal, writ of error or supersedeas shall, when it is to or from a judgment, decree or order of the circuit court of any county or from any court within any incorporated city, town or village which has the right of appeal to the supreme court of appeals, be docketed in said court. The clerk of the court wherein it is docketed, shall in a case in which it is allowed, on petition, issue a summons against the parties interested, other than the petitioners, that they may be heard, and also issue any supersedeas which may be awarded, which summons, writ of error or supersedeas may be served upon the party in person or his attorneys in the court from which the appeal is taken.'' The statute did not require the summons to be issued within any stated period. The motions, therefore, are overruled.

We find no warrant in law under the circumstances for allowances out of the fund to attorneys for the parties to the suit other than to counsel for the trustee. ''Except in rare instances the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the common benefit of all; * * *.'' *McCormick* v. *Elsea*, 107 Va. 472, 59 S. E. 411. The allowances to Littlepage as special attorney· was probably justified upon the theory that he was familiar with the litigated claims and cooperated with counsel in direct charge of these matters. The allowance to the receivers, in our opinion, is excessive and should be reduced by the trial court. ''A receiver is

entitled to a reasonable compensation for his services. But the allowance should be made 'with jealous regard for the rights of all concerned'." *Hyre* v. *Johnson*, 107 W. Va. 524.

The decree, complained of, is reversed in so far as herein indicated but otherwise affirmed; and the cause remanded for further proceedings.

*Reversed in part; affirmed in part; remanded.*